**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DIANA GORDON OFFORD** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **CASE NO. 4:19-CV-2386** |
| | § | |
| | § | |
| **CITY OF FULSHEAR** | § | |
| **DEFENDANT** | § | **JURY DEMAND** |

**COMPLAINT**
**RACE AND AGE EMPLOYMENT DISCRIMINATION AND WRONGFUL**
**TERMINATION UNDER TEXAS LAW**

Plaintiff, Diana G. Offord ("Plaintiff"), by and through her attorney, Diogu Law Firm,

PLLC, sues the defendant, the City of Fulshear. In support, plaintiff states as follows:

**SUMMARY OF CLAIMS**

1.      Plaintiff brings this action alleging violations of Title VII of the Civil Rights Act

of 1964, 72 U.S.C. §§ 2000e *et seq*. ("Title VII"); Age Discrimination in Employment Act, 29

USC §621, et seq, and the over 100 year Texas Judicial Proceeding absolute immunity which is a

bar against any form of civil liability or remedy against the Plaintiff including her termination

based on her communication in judicial proceeding.

2.      An absolutely privileged communication is one for which, due to the occasion

upon which it was made, no civil remedy exists, even though the communication is false and was

made or published with express malice. See Bird v. W.C.W., 868 S.W.2d 767, 771-72

(Tex.1994); James v. Brown, 637 S.W.2d 914, 916 (Tex.1982); Reagan v. Guardian Life Ins.

Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942). This doctrine has been firmly established in

Texas for well over one hundred years. See Runge v. Franklin, 72 Tex. 585, 10 S.W. 721, 723

(1889) to challenge City of Fulshear, ("FULSHEAR") continuing policy, pattern and practice of

race discrimination against African Americans with respect to skilled labor employment. Fulshear has implemented these policies and practices despite knowing that they have a longstanding disparate impact on African American skilled labor employment

3.      Fulshear was a small, quiet and peaceful country town of mostly African American residents which at once upon a time an elected Black Mayor and with some African American council members until recently. The drastic change began with Thomas Kuykendall's mayoral administration.

4.      As a result of recent Fulshear's policies, patterns, and practices, there no skilled African American employee in the Fulshear workforce. Fulshear's city-wide policies and practices systematically violate African American employees' rights and result in the unchecked race bias that pervades its management and city council.

5.      The lack of skilled African American employee in the Fulshear workforce is not isolated or exceptional, but rather the regular and predictable result of Fulshear's policies and practices and lack of proper accountability measures to ensure fairness.

6.      Plaintiff contends that Fulshear officials discriminated against her by terminating her employment because of her race, and African American and because of her age (over 40) and replacing her with a younger white employee.

7.      Plaintiff further asserts that Fulshear created a hostile working environment for her, causing her to suffer major depression, failed to provide reasonable private city Secretary office as has been the policy of the City before Thomas Kuykendall became mayor, someone attempted to frame her to get her fired by planting incriminating entrapment evidence consisting of cash and checks made out to the City of Fulshear, into her drawer hoping that she would steal the money. She brought it to the attention of the City Manager, C.J. Snipes, who stated to Ms.

2

Offord that he will investigate. Finally on more than one occasion has open frivolous investigation in order to dig out dirt that will lead her to be fired.

8.      When all the above failed, the City of Fulshear decided to violate a 100 year Texas Law to achieve that goal.

9.      Finally, the Plaintiff contends that the reason for the termination of her employment was in violation of established Texas laws and was not real reason for her employment being terminated.

## THE PARTIES

### PLAINTIFF

10.      Plaintiff Diana G. Offord is a 67 year old year old African American woman who lives in Fort Bend County, Texas. She is a citizen of the United States.

11.      Plaintiff was employed by Fulshear from approximately May 2006 until her termination and her performance has always was been satisfactory.

### DEFENDANT

12.      Defendant City of Fulshear, a city in Texas, with a place of business within the city of Fulshear, Fort Bend County, at 30603 FM 1093, Fulshear, Texas 77441

13.      Upon information and belief, Fulshear maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

14.      During all relevant times, Fulshear was Plaintiff's employer within the meaning of all applicable statutes.

## JURISDICTION:

15.      The jurisdiction of this Court is invoked by the plaintiffs pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202. "The Civil Rights Act of 1866," 42 U.S.C. §

1981, and 1981a and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991. Equitable and other relief is sought under 42 U.S.C. 2000e-5(g). And because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

16.    In addition, this Court has supplemental jurisdiction over the relevant Texas Law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because City of Fulshear maintains offices in this district, conducts business in this district, and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practices were committed here, and employment records relevant to those practices are maintained and administered here.

18.    The Southern District of Texas has personal jurisdiction over Fulshear because it maintains offices in this District, does business in Texas and in this district, and because many of the acts complained of and giving rise to the claims alleged herein occurred in Texas and in this District.

19.    Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII claims. Plaintiff timely filed a charge of Racial and Age discrimination individually Equal Employment Opportunity Commission ("EEOC"). By notice

4

dated April 10th, 2019, the EEOC issued a Notice of Right to Sue. This complaint is made within ninety days of the Notice of Right to Sue. See attached Exhibit "A"

<strong>FACTUAL ALLEGATIONS</strong>

20.     Plaintiff Diana Gordon Offord and African American, 67 years of age have been employed by City of Fulshear as City Secretary since May 2006 and my performance always was satisfactory before being terminated by Fulshear on March 23, 2018. See attached Exhibit "B"

21.     Prior to employment with City of Fulshear, she had served in various positions for the State of Texas for over 33 years and served in a supervisory position before retiring from the State of Texas Aged & Disabled Program.

22.     Specifically, I began working for the City of Fulshear, under Mayor James W. Roberts as my supervisor in May 2006. At all times relevant to this suit, until May 2010 when Tommy Kuykendall (aka Thomas C. Kuykendall, Jr.) was elected Mayor Plaintiff and her Predecessor City Secretary Kathy Mayfield occupied a single huge Room which was the size needed to properly function as a city Secretary.

23.     On May 2010, Mayor Thomas Kuykendall, a white Male, became Diana Gordon Offord's sole supervisor until September 2010 when he became her first level supervisor. And the Newly hired City Manager, Mr. C.J. Snipes, another white male because her second level supervisor. At all times relevant to the suit C. J. Snipes reported directly to Mayor Kuykendall. At all-time relevant to this suit Mayor Kuykendall had a firm grip and control over C. J. Snipes. Mayor Thomas Kuykendall was the mayor of Fulshear, from May 2010 to May 2016 and then a city Council man the day Diana Offord was fired.

24.     Mr. Thomas Kuykendall, Jr. aka Thomas C. Kuykendall, Jr. took office as Mayor of the City of Fulshear **May 18, 2010 and** C.J. Snipes, city administrator (later name changed to city manager) was employed by the City Of Fulshear 9-1-2010.

## RACIAL DISCRIMINATION

25.     Immediately upon taking office as Mayor of the City of Fulshear, Mr. Kuykendall told a city Councilman, J. B. Collins if he really believe that Diana Gordon Offord can really process paperwork efficiently as required by city secretary's office essentially saying "blacks just cannot process paperwork efficiently" to which J. B. Collins responded of course she can, "she has been doing it all these time.

26.     To consolidate his grip on power as mayor, Thomas Kuykendall recruited most of his close friends to run for City Council in 2014 and with the hope of firing the Black City Secretary.

27.     One of those he recruited was Tricia Krenek who later became the Mayor Pro tem.  One of Ms. Krenek platforms to her mostly white constituents including Tajana Mesic was that if elected her first mission was to fire that Black City Secretary.

28.     Mayor Pro-Tem, Tricia Krenek, got her wishes because she presided over the firing of Diana Offord, the Black City Secretary. She made sure, that Ms. Offord was not afforded an opportunity to challenge the evidence and the procedure that led to her termination.

## HOSTILE WORKING ENVIRONMENT

29.     On or about September 21st 2011 Diana Offord sent a letter to the City Council Members and City Administrator, C. J. Snipes regarding cash that was planted in her  in my desk which she believed was meant to incriminate her.

30.     Specifically, on or about September 20th 2011 or thereabout upon coming to work, Diana Offord opened her desk and found $200 cash and a check for $400.

31.     In shock, she immediately asked, Jeanette Jasso then the municipal court clerk if she had put these things in her desk.  Ms. Jasso stated no.

32.     She then reported to Mr. Snipes that someone was trying to set her up to make her lose my job.

33.     Instead of being outraged Mr. Snipes informed her and Jeanette to keep this issue quiet and he would investigate it and get back with her.

34.     To this day, she has not heard any response from Mr. Snipes.

35.     But can be no other explanation other than that C. J. Snipes, placed the money in her desk because he was the only person to had access to such money that was made to the City of Fulshear, and to the Office of the City Secretary afterhours.

36.     Further, sometime during the summer months of 2014, Thomas Kuykendall treatment of Ms. Offord became more hostile.

37.     City of Fulshear administrative staff without notice to the City Secretary ordered James Woods and John Davison, the maintenance workers to move Diana Offord, the City Secretary from the City Secretary's officially designated Office space to a much smaller office space.

38.     The small office is about half the size the City's designated secretary's office. Diana Offord was occupying, and part of the space was taken up by a huge safe.

39.     Even though City of Fulshear administrative staff moved Ms. Offord's office to a smaller space, kept her principle job duties did not change and additional duties were added, but

took away the prestige that comes with her job title, thereby significantly diminishing her substantive importance and the importance of her job "City Secretary of the City of Fulshear").

40.    At all times relevant to this suit, until her termination in March 2018, Mr. Kuykendall did not subject any of the other two white employees who served at the same level of responsibility as the City Secretary in a similar manner.

41.    Further, the Plaintiff's predecessor City Secretary, Ms. Kathy Mayfield, who was white occupied that huge single office which was designated and named the Office of the City Secretary all through her tenure as the secretary.

42.    At all times relevant to this suit, until 2014 the mayoral administration of Thomas Kuykendall and C. J. Snipes, Plaintiff also occupied that office. The office was specifically tailor made to accommodate all the functional requirement to functional perform the work of city secretary.

## AGE DISCRIMINATION

43.    On or about May 23rd, 2018, Offord was provided with a termination letter five minutes before office closing time. Ms. Offord was never provided with the opportunity to dispute her termination. Even before, Diana Offord, could be officially terminated by the City Council as required by the ordinance, Plaintiff was replaced by a 36 year old white woman at the time.

## WRONGFUL TERMINATION

44.    The city's stated reason for terminating Ms. Offord was that she made a false as a party/witness in a judicial proceeding.

45.    Specifically, on or about 2012, Ms. Offord filed an affidavit of heirship for her deceased father. Sometime during that Proceeding, one of the parties who claims to have an

interest in the estate of Winter Gordon Sr., filed a motion for sanction claiming that the Plaintiff violated Rules 13,10, 21, 21(a) and 21(b). The court imposed sanction on June 20th, 2013. See attached Exhibit "C"[1]

46.    Therefore the reason stated in the letter used as basis for terminating the Plaintiff's employment was materially false and misleading at best which by itself is very disturbing and dangerous.  The Defendant fraudulently made it seem that the Court found that the Plaintiff made false statements. The Court did not so find.

47.    Not to be deterred, the Defendant based solely on the false narrative it concocted terminated her employment. Compare the attached Exhibit "B" and Exhibit "C"

48.    Further and on the alternative, at all times relevant to this suit, until her termination in March 2018 the Defendant knew or should know that pursuant to a well-established Texas law, the Plaintiff was cloaked with Judicial proceeding absolute immunity from civil liability based on communication made in a Judicial proceedings as a witness or a party under Cause NO. I 2-CPR-024269.

49.    The over 100 year Texas Judicial Proceeding immunity bars any civil liability or remedy against the Plaintiff. An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even though the communication is false and was made or published with express malice. See Bird v. W.C.W., 868 S.W.2d 767,

---

[1] (a) **Rule 13** authorizes the imposition of sanctions against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass. TEX. R. CIV. P. 13, (b) Chapter 10 of the Texas Civil Practice and Remedies Code allows a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. Low v. Henry, 221 S.W.3d 609, 615 (Tex. 2007); TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001-.005 (West 2012), (c) Rule 21b. Sanctions for Failure to Serve or Deliver Copy of Pleadings and Motions. In fact under Texas law, there is no rule 21 and 21(a) sanctions.  Furthermore, under established Texas Law, for an Order imposing sanction under rule 10 and 13 to be enforceable the Order "shall describe . . . the conduct the court has determined violated Section 10.001 and rule 13 and explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon 2002). That was not the case here.

771-72 (Tex.1994); James v. Brown, 637 S.W.2d 914, 916 (Tex.1982); Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942).) This doctrine has been firmly established in Texas for well over one hundred years. See Runge v. Franklin, 72 Tex. 585, 10 S.W. 721, 723 (1889)

50.     As such terminating her employment based on the letter attached as Exhibit "B" is a conclusive showing that the Plaintiff was wrongfully terminated. The Defendant's conduct in terminating her employment was intentional and pretext to cover the real reason for her termination which was race and age.

## DISPARATE TREATMENT BASED ON HER RACE

51.     The City of Fulshear has treated the Plaintiff differently from similarly situated employees who had actually made false statement on a public record as it alleged against the Plaintiff herein.

52.     For example, the city fired the Plaintiff, who is Black because their concocted false statement allegation against her, violated its policy of "integrity and efficiency of the City of Fulshear's operations and its service to the people of Fulshear".

53.     But the City of Fulshear took no action against another employee, Kristina Brashear, the City's former finance director, who was white, whose salary information came into question about pay stubs and W2s not matching for years 2013 and 2014 to the loan officer in her attempt to qualify for a loan to purchase a home which also could have been a violation of policy of "integrity and efficiency of the City of Fulshear's operations and its service to the people of Fulshear" but was never investigated by upper management nor was her employment terminated.

54.     Because of the action(s) taken by the City of Fulshear over the years, the Plaintiff has been persecuted through the community and social media just for being black. The city of

Fulshear's conduct has humiliated, destroyed not just the Plaintiff but her close knit family and her family business all because some lawyer claimed that the Plaintiff made a false statements in a judicial proceeding and she is born BLACK?

## COUNT ONE
## (RACIAL DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC 2000E. ET SEQ.)

55.     The foregoing paragraphs are realleged and incorporated by reference herein

56.     Prior to bring this action, Plaintiff has filed a timely charge with the EEOC and has thus exhausted her administrative remedies. Fulshear, has engaged in an intentional, city-wide, and systematic policy, pattern, and/or practice of discrimination against its skilled African America employees.

57.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.

58.     The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus

59.     The discriminatory acts that constitute Fulshear's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case

60.     As a direct result of Fulshear's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

61.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

62.     Plaintiff requests relief as hereinafter described.

## CLAIM TWO
## DISPARATE DISCRIMINATION
## (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000E *ET SEQ.*)

63.     The foregoing paragraphs are realleged and incorporated by reference herein

64.     Prior to bring this action, Plaintiff has filed a timely charge with the EEOC and has thus exhausted her administrative remedies. Fulshear, has engaged in an intentional, city-wide, and systematic policy, pattern, and/or practice of discrimination against its skilled African America employees.

65.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.

66.     The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus

67.     The discriminatory acts that constitute Fulshear's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case

68.     As a direct result of Fulshear's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

69.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

70.     Plaintiff requests relief as hereinafter described.

## COUNT THREE
### (AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) 29 USC 621)

71.     The foregoing paragraphs are realleged and incorporated by reference herein.

72.     The Defendant's conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

73.     The discriminatory acts that constitute Fulshear's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case

74.     As a direct result of Fulshear's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

75.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

76.     Plaintiff requests relief as hereinafter described.

## COUNT FOUR
### (HOSTILE AND ABUSIVE WORKING ENVIRONMENT)

77.     The foregoing paragraphs are realleged and incorporated by reference herein

78.     The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab Act, and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

79.     The discriminatory acts that constitute Fulshear's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case

80.     As a direct result of Fulshear's discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

81.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

82.     Plaintiff requests relief as hereinafter described.

**COUNT FIVE**
**INTENTIONAL DISCRIMINATION AND WRONGFUL TERMINATION**
**(TEXAS LAW AGAINST ADVERSE CIVIL ACTION BASED ON STATEMENT MADE**
**IN A JUDICIAL PROCEEDING)**

83.     The foregoing paragraphs are realleged and incorporated by reference herein.

84.     The Defendant took an adverse civil action against the Plaintiff, firing her for allegedly making a false statement in a judicial proceeding in violation of over 100 year old established state law.

85.     Further, it is clear that Defendant defrauded the public and the resident of the City of Fulshear for the reason stated for terminating their City's secretary as an employee of the City of Fulshear.

86.     The discriminatory acts that constitute Fulshear's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case within the State of Texas, and the discriminatory policies, patterns, and practices have had a discriminatory impact on the Skilled African American employees of Fulshear within the State of Texas.

87.     As a direct result of Fulshear's discriminatory policies and/or practices as described above, Plaintiff and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits

88.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited under Federal and State Texas Law.

89.     The Plaintiff an African-American was subjected to a stricter level of scrutiny than her similarly situated white co-workers by the City of Fulshear.

90.     Plaintiff was fired for allegedly making a protected speech in a judicial proceeding while the same behavior that was not protected under state law from similarly situated white employee was largely ignored when discovered.

14

91.     Plaintiff requests relief as hereinafter described.

## JURY DEMAND

**92.**     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury in this action.

## PRAYER FOR RELIEF

93.     WHEREFORE, Plaintiff and the Class pray for relief as follows:

a.  A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, *et seq.* et-al and Texas State Law

b.  A preliminary and permanent injunction against Fulshear and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff or the Class because of their gender or participation in this lawsuit;

c.  An order that Fulshear institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of their past and present unlawful employment practices;

d.  An order requiring Fulshear to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions

e.  An order appointing a monitor to ensure that Fulshear complies with the injunction provisions of any decree that the Court orders.

f.  An order retaining jurisdiction over this action to ensure that Fulshear complies with such a decree;

g.  An order for damages for front pay, pain and suffering, loss benefits the sum of two (2) million dollars compensatory damages suffered because of the discrimination;'

h.  Back pay (including interest and benefits);

i.  All damages sustained as a result of Fulshear's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

j.  Exemplary and punitive damages in an amount commensurate with Fulshear's ability to pay and to deter future conduct;

k.  Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

l.  Pre-judgment and post-judgment interest, as provided by law; and

m.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Respectfully submitted,

By:     /s/ <u>Diogu Kalu Diogu II, LL.M</u>
Diogu Kalu Diogu II, LL.M.
State bar No. 24000340
DIOGU LAW FIRM PLLC
P. O. Box 994,
Fulshear, Texas 77441
Phone (713) 791 3225
Fax     (832) 408-7611
diogu.diogu.law.firm@gmail.com
ATTORNEY FOR PLAINTIFF

## **VERIFICATION**

I declare certify and verify under penalty of perjury that the foregoing including the

attached documents and/or exhibits are true and correct.

Executed on July 2nd, 2019

*/s/ Diana G. Offord*
Diana G. Offord

## **EXHIBITS**

Exhibit A:          Notice of Right To Sue

Exhibit B:          Termination Letter by Defendant

Exhibit C:          Order Imposing Sanction